FILED

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

2012 AUG 20 A 3: 26

CLERK US DISTRICT COURT
ALEXANDRIA VIRGINIA

| |
|---|
| THE CHURCH OF THE GOOD SHEPHERD - UNITED METHODIST<br><br>2351 Hunter Mill Road<br>Vienna, Virginia 22181<br><br>Plaintiff,<br><br>v.<br><br>THE BOARD OF SUPERVISORS<br>OF FAIRFAX COUNTY, VIRGINIA<br><br>12000 Government Parkway<br>Fairfax, Virginia 22035<br><br>Defendant. |

Civil Action No. 1:12CV925 CMH/JFA

## COMPLAINT

1.     This is a complaint for a preliminary injunction and a permanent injunction

pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983, and the Religious Land Use

and Institutionalized Persons Act of 2000, 42 U.S.C. §§ 2000cc *et seq.* (RLUIPA).

2.     This Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 1331 and 1343.

The declaratory and injunctive relief sought is authorized by 28 U.S.C. §§ 2201 and

2202, 42 U.S.C. §§ 1983 and 2000cc-2(a) and Rule 57 of the Federal Rules of Civil

Procedure.

3.     Venue is proper because the claims alleged herein arose in the Eastern District of

Virginia.

## PARTIES

4.     The Church of the Good Shepherd – United Methodist ("Church") is a religious institution or assembly and an unincorporated association organized in 1967 under the rules and discipline of the United Methodist Church and its Virginia Conference.

5.     The Board of Supervisors ("County" or "Board") is the governing body of the County of Fairfax, Virginia, a political subdivision of the Commonwealth of Virginia.

## NATURE AND PURPOSE OF THE ACTION

7.     The Church brings this action to stop the Defendant from restraining the free speech rights of the Plaintiff and its congregation and for a judgment declaring the Defendant's land-use ordinance and regulatory policy to be an impermissible burden on the Plaintiff's free exercise of religion.

8.     As a direct and proximate result of Defendant's actions under color of law, the Plaintiff and its congregation have been damaged and have suffered and continue to suffer irreparable harm from the Defendant's actions in regulating and restricting Plaintiff's protected speech and in imposing prior restraint on Plaintiff's free speech rights.

9.     This action for injunctive and declaratory relief and damages arises from the actions of Defendant, its officials and employees in enforcing a county ordinance regulating religious exercise and speech disseminated through signs in violation of the First and Fourteenth Amendments as well as 42 U.S.C. §§ 1983, 1988 and 2000cc *et seq.*

10.     The Fairfax County Zoning Ordinance, both facially and as applied to the Plaintiff, violates the free exercise of protected speech, through restricting the content of the speech and also as a prior restraint on the Plaintiff's ability to exercise its free speech rights. The

Defendant's enforcement policy further restrains protected speech by limiting the number of messages that may be displayed on lawful signs to two in a given 24-hour period.

11.     The Defendant's enforcement policy has burdened the Plaintiff's exercise of religion through an individualized assessment and restriction of the Plaintiff's use of its lawful and permitted sign.

## FACTUAL BACKGROUND

12.     On July 3, 2012, while Fairfax County was under a state of emergency following the deadly derecho storm four days before, with more than 100,000 county residents still without power and afternoon temperatures nearing 100 degrees, Fairfax County dispatched one of its officials to The Church of the Good Shepherd at 2351 Hunter Mill Road in Vienna. The official's assignment was to place the Church's sign under surveillance.

13.     On or about July 19, 2012, the Church learned the results of that surveillance. In an official Notice of Violation, officially denoted as a "Sheriff's Letter," delivered to the Church office, the County's Department of Code Compliance demanded that the Church demolish its newly erected $37,000 sign or "permanently" limit the number of messages it displayed to two in any given 24-hour period.

14.     The Sheriff's Letter listed three messages allegedly observed during the surveillance, including a message that read, "WELCOME, Come on in and beat the heat." On the day that message was displayed, local temperatures reached 100 degrees or more, portions of Hunter Mill Road remained closed for tree removal and many families in the immediate vicinity were still without power. A copy of that letter is attached as Exhibit A.

15.     Acting under the County's permit process, the Church erected its new sign in 2012

at a cost of more than $37,000. After final inspections by the County, the Church began

operating the sign on or about June 1, 2012. A photo of the sign is attached as Exhibit B.

16.     Although the sign is capable of displaying streaming, scrolling or moving letters and

messages, the Church is not employing those functions. Similarly, the sign is capable of

displaying blinking or flashing messages or symbols and changing intensities, colors and

sizes of messages or symbols, but the Church is not employing these functions.

17.     From time to time, at intervals the Church has deemed appropriate, it has removed

the sign's single message and replaced it with a new message.

18.     Although denoted a "Sheriff's Letter," the letter in fact was issued by the County's

Department of Code Compliance and signed by Gabriel Zakkak, a code compliance

investigator.

19.     In the letter, the County asserted that, in using its sign to display static, non-moving

messages, the Church violated a County policy limiting the number times a message can be

changed to two in any given 24-hour period. To comply with the County's policy, the

County ordered the Church to choose between two courses of action:

- Removing, on a permanent basis, the changeable copy LED sign
  from the property, or
- Limiting, on a permanent basis, the changeable copy LED sign
  to change messages a maximum of two times within a 24-hour period.

20.     At the suggestion of Plaintiff's counsel, the parties met and conferred at the Church

on July 30, 2012. The parties were unable to resolve the matter.

21.     On August 14, 2012, the Church counsel informed the County by letter that the

Church could not accept the County's demand that it permanently limit the number of

message changes to two in a given 24-hour period. Additionally, the Church reiterated its

request that the County work with the Church to find a way to resolve the matter.

22.     On August 17, 2012, counsel for the County informed the Church that it was

continuing to review the Church's letter and that it would not be able to respond until some

time after the 30-day deadline set forth in the Sheriff's Letter.

22.     In the Sheriff's Letter, the County ordered the Church to choose between these two

alternatives and implement its decision within 24 hours of receiving the letter. Otherwise,

the Church was given the option of appealing the decision to the County's Board of Zoning

Appeals within 30 days, or by August 20, 2012.

23.     The Church is not required or otherwise obligated to pursue an administrative appeal

before instituting this action.

## COUNT ONE
### Constitutional and Civil Rights Pursuant to 42 U.S.C. §§ 1983 and 1988.
### Violation of First and Fourteenth Amendment Speech Rights

24.     The foregoing allegations are incorporated as if re-alleged herein.

25.     The subject ordinance sets forth in detail the types of signs that are prohibited.

The pertinent restrictions are contained in Art. 12, Sec. 104 of the Fairfax County Zoning

Ordinance, Para. 6:

> Any sign displaying flashing or intermittent lights, or lights of changing
> degrees of intensity of color or moving copy. This prohibition shall not
> apply to signs which display time, temperature, weather or environmental
> conditions, but only when the sign does not constitute a public safety or
> traffic hazard as determined by the Zoning Administrator.

26.     By its plain terms, the ordinance is content specific: it allows signs with moving,

or scrolling, copy that display time, temperature, weather or unspecified environmental

conditions. Curiously, the County, in its notice of alleged violation, complained of a message plainly within its excepted language pertaining to "temperature, weather or environmental conditions."

27.     In any event, the County's ordinance is content specific, not content neutral and therefore subject to strict scrutiny by this Court.

28.     The restrictions imposed by the County under this ordinance restrain Plaintiff's free speech rights and are in no way justified by any compelling governmental interest.

29.     Defendant, through the "Sheriff's Letter" and other actions has acted under color of the Fairfax County Zoning Ordinance to deprive the Church of its free speech rights by restricting the content, scope and number of messages that may be displayed on its church sign in a given 24-hour period.


## COUNT TWO
### Constitutional and Civil Rights Pursuant to 42 U.S.C. §§ 1983 and 1988.
### Violation of First and Fourteenth Amendment Speech Rights
### through Prior Restraint

30.     The foregoing allegations are incorporated as if re-alleged herein.

31.     The subject ordinance is enforced by the County's Department of Code Compliance, which maintains that the County has a longstanding "policy" that "any moving (changeable) copy sign other than signs displaying time, temperature, weather or environmental conditions, shall be allowed to change messages a maximum of 2 times within a 24-hour period."

32.     The County's "policy" is in fact a content-based prior restraint on the Plaintiff's free speech rights and is unrelated to any compelling governmental interest.

33.     Defendant, acting under color of the Fairfax County Zoning Ordinance, has

utilized this policy and taken other actions to deprive the Church of its free speech rights

by restricting the content and scope of messages that may be displayed on its church sign.

## COUNT THREE
### Violation of the Religious Land Use
### and Institutionalized Persons Act of 2000, 42 U.S.C. §§ 2000cc *et seq*
### in Deprivation of Religious Freedom

34.     The foregoing allegations are incorporated as if re-alleged herein.

35.     The County states in its notice of violation that a County official conducted

surveillance of the Church on July 3, 2012, and monitored messages displayed on the

Church's sign.

36.     The County's surveillance of the Church's communications was an individual

assessment of the use for which the sign was employed. Indeed, any enforcement activity

in furtherance of the County's so-called "policy" restricting the number of times a sign's

message may be changed will require an individual assessment of the proposed use of the

Church sign and property.

37.     The County's scheme of land-use regulation under which the County makes an

individual assessment of the proposed and actual use of the Church's sign imposes a

substantial burden on the Plaintiff's religious exercise, and the County cannot

demonstrate that the burden is in furtherance of a compelling governmental interest and

that it is the least restrictive means of furthering that interest.

35.     In addition to its Sunday morning worship services, the Church regularly offers

worship, prayer and religious study opportunities throughout the week. In addition, the

church regular conducts service projects, mission trips, youth activities and other

functions worthy of announcements and communications using the Church sign. Under the County's restrictive policy, the Church must pick and choose which of its various functions can be displayed on its sign each day. Such an impact is a substantial burden on the Church's religious exercise.

36.    As a religious organization, the Church is often in the position of calling residents to act, pray or assist others in response to dynamic events. As set forth in paragraphs 12 and 14, the Church recently offered its air-conditioned space as a refuge to neighbors whose homes' interior temperatures had reached dangerously high levels.

37.    The County's so-called policy contains no provision for emergencies or other urgent needs for communication. The County cannot demonstrate that its policy is the least restrictive means of furthering any reasonable or compelling government interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Church of the Good Shepherd – United Methodist, requests that this Court enter an Order that:

A.  Declares that the Defendant's actions under its subject ordinance and enforcement policy constitute a violation of 42 U.S.C. § 1983, and the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. §§ 2000cc *et seq.*

B.  Enjoins the Defendant, its employees and agents from violating 42 U.S.C. § 1983, and the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. §§ 2000cc *et seq* by restricting the Plaintiff's free speech rights and by substantially burdening the religious exercise of the Plaintiff.

C.  Awards monetary damages to the Plaintiff in compensation for its violations of

42 U.S.C. § 1983, and the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. §§ 2000cc *et seq*

      E.      Awards reasonable attorney's fees and costs as to the Defendant pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1988; and

      The Plaintiff further requests such additional relief as the interests of justice may require.

**PLAINTIFF REQUESTS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully submitted,

By:      

Michael M. York (VSB #4749)
myork@wehneryork.com
WEHNER & YORK, P.C.
11860 Sunrise Valley Drive, Suite 100
Reston, Virginia 20191
Tel: (703) 476-8000
Fax: (703) 991-0846
*Counsel for Plaintiff*

Dated: August 20, 2012

9